*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 28, 2019

**By ECF and Electronic Mail**

The Honorable Kimba Wood
United States District Judges
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

        Re:    *United States v. Munish Sood*, 18 Cr. 620 (KMW)

Dear Judge Wood:

        The Government respectfully submits this letter in connection with the Government's proposed restitution order with respect to defendant Munish Sood ("Sood"), who was sentenced before the Court on September 12, 2019. At sentencing, the Court deferred entry of the proposed order and requested further information from the Government.

        On August 27, 2018, pursuant to a cooperation agreement with the Government, Sood pleaded guilty to a three-count Information charging him in three Counts. Count One charged Sood with participating in a conspiracy under 18 U.S.C. § 371 with three objects: (i) offering and to pay bribes to NCAA Division I men's college basketball coaches in exchange for those coaches agreeing to and exerting influence over student-athletes under their control to retain the services of the defendant and other scheme participants, in violation of 18 U.S.C. § 666; (ii) depriving the employers of NCAA Division I men's college basketball coaches of the right to their employees' honest services through the payment of bribes to those coaches, in violation of 18 U.S.C. § 1343 and 1346; and (iii) traveling in interstate commerce and using the mail and facilities in interstate and foreign commerce in order to offer bribes to men's college basketball coaches at NCAA Division I universities in violation of certain state commercial bribery statutes, in violation of 18 U.S.C. 1952(a)(1) and (a)(3). Count Two charged Sood with participating in a scheme to pay bribes to NCAA Division I men's college basketball coaches in exchange for those coaches agreeing to and exerting influence over student-athletes under their control to retain the services of the defendant and other scheme participants, in violation of 18 U.S.C. § 666. Finally, Count Three charged Sood with participating in a wire fraud conspiracy to defraud NCAA Division I universities by "facilitating and concealing payments to prospective and current student-athletes at those universities, and their families . . . thereby causing those universities to provide or agree

to provide athletic scholarships to student-athletes who, in truth and in fact, were ineligible to compete as a result of the payments," in violation of 18 U.S.C. § 1349 (18 Cr. 620, Dkt. No. 70 at ¶ 8).

None of the universities that were the victims of Counts One and Two seek restitution. With respect to Count Three, for which the University of Louisville does seek restitution for the costs of a scholarship issued under false pretenses, as the Government highlighted in its sentencing submission, the conduct charged in that Count was the subject of a four-week trial before the Hon. Lewis A. Kaplan in October 2018. At that trial, and based in part of Sood's own testimony, the Government established that Sood conspired with, among others, James Gatto of Adidas, Code, and Dawkins, to funnel approximately $100,000 from Adidas to Brian Bowen Sr., the father of Brian Bowen Jr. ("Bowen"), who was an all-American high school basketball player and considered at the time to be one of the top recruits in his class. The payments were intended to help secure Bowen's commitment to play basketball at the University of Louisville, a school sponsored by Adidas, and to further ensure that Bowen ultimately retained the services of the new sports management company that had recently been formed by Dawkins and Sood.

Moreover, and of particular relevance to the proposed restitution order, the trial evidence established that the scheme defrauded the Universities – which were not aware of the illicit payments – by causing the Universities to issue athletic scholarships under false pretenses. Indeed, the trial evidence established that players like Bowen had to certify to the schools that they were eligible to compete and, thus, that neither the players nor their families had received payments from any third party. Those representations, of course, were not accurate as a result of the defendants conduct, and as a consequence, the Universities issued scholarships under materially false pretenses. The scheme participants, who were fully aware that the universities could not and would not issue athletic scholarships to players whose families had received illicit payments from them, took elaborate steps to conceal the payments from the University, including generating sham invoices, routing the money indirectly and, in some cases using "bat" phones to communicate about the illicit payments.

With respect to harm to the University of Louisville, during that trial, the Government called a compliance officer from the University of Louisville, who testified unequivocally that, had the University been aware of the secret payments to Bowen's father, it would have never offered Bowen an athletic scholarship. This compliance officer, as well as compliance officers from other victim universities, also testified that each university had a maximum number of athletic scholarships it could offer each year. The compliance officer also testified that, once the University learned of the scheme when the defendants were arrested in September 2017, Bowen was not permitted to play, but by that point, the University had already incurred certain costs in connection with Bowen's scholarship during the summer and fall of 2017, which are outlined further below. Moreover, once the University of Louisville declared Bowen ineligible after learning of the secret payment scheme, the University was not able to simply provide Bowen's scholarship instead to a different student-athlete. Rather, that athletic scholarship slot went unfilled. Accordingly, there was also a lost opportunity cost to the University of Louisville as a result of the scheme. Finally, the compliance officer from the University of Louisville, as well as compliance officers from other universities, testified that by playing a

student-athlete that was not actually eligible to compete, the University faced various adverse consequences, including NCAA fines and penalties and forfeiting contests in which the student-athlete had competed. A copy of the University of Louisville's victim impact statement from the *Gatto* sentencing is annexed hereto as Exhibit A.

At the end of trial, the jury convicted defendants Gatto, Code and Dawkins, rejecting their defense that they were simply trying to "help" the Universities and finding that the evidence established, beyond a reasonable doubt, that the defendants acted with the specific intent to defraud the Universities. The jury's finding and the trial evidence in this respect was fully consistent with Sood's guilty plea. At the time of his guilty plea, Sood allocuted to the following with respect to Count Three:

> I believed that NCAA rules prohibited current or prospective NCAA student-athletes or their families from receiving these types of payments. I believed that the players would not disclose these payments to their universities and that receipt of those payments by the players and/or their families could make the players ineligible, causing harm to the university.

(08/27/18 Plea Tr. at 26).

With respect to the amount sought in the proposed order, the University of Louisville seeks restitution for harms that were directly caused by the scheme to steer Bowen to the University of Louisville and cause that university to issue him a scholarship under false and fraudulent pretenses. In particular, the University seeks to recover the amount expended on Bowen Jr., or approximately $28,261, which is based on the actual costs incurred by the University during the period that Bowen attended the university during the summer and fall of 2017. While it is the Government's understanding that the University of Louisville has incurred significant legal fees in connection with the criminal investigation, it is not seeking to be compensated for any of these legal fees.

The amount sought, which is consistent with the restitution that Judge Kaplan ordered the defendants in *Gatto* to pay to the University of Louisville based on the trial evidence, was not disputed by the defendants in that case. *See United States v. Gatto,* 17 Cr. 686, Dkt. Nos. 308, 309. It is also consistent with the amount Judge Kaplan required another scheme participant and cooperating witness, Thomas "TJ" Gassnola, to pay to the University of Louisville for his role in the scheme. *See United States v. Gassnola*, 18 Cr. 252 (LAK).[1] Each of these prior restitution orders expressly contemplated a similar order being entered with respect to Sood, and the Government's proposed order would hold Sood jointly and severally responsible for this restitution obligation with those other scheme participants, Gatto, Code, Dawkins and Gassnola.

---

[1] James Gatto and Thomas Gassnola were required to pay restitution to additional universities, the University of Kansas and North Carolina State University. The Government is not seeking restitution from Sood with respect to these universities as his participation in Count Three was limited to defrauding the University of Louisville in connection with the offering of an athletic scholarship to Brian Bowen, Jr.

Finally, as the Court requested at Sood's sentencing hearing, annexed hereto as Exhibit B is a transcript of the sentencing proceeding in *United States v. Gatto et al.*, 17 Cr. 686 (LAK). As the Court will observe from its review of the transcript, while there was a dispute between the parties regarding the restitution obligation to the University of Kansas and North Carolina State University, restitution as to the University of Louisville was imposed as to defendants Dawkins and Code without any objection from their counsel. (Ex. B, at 44-45). Defendant Gatto later agreed to restitution, including the $28,261 owed to the University of Louisville. *See United States v. Gatto et al.*, 17 Cr. 686 (LAK), Dkt. Nos. 315, 316.

A proposed restitution order has been submitted via electronic mail to the Court for its review.

Respectfully submitted,

AUDREY STRAUSS
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: /s/
Noah Solowiejczyk
Assistant United States Attorney
(212) 637-2473

cc: Richard Zack, Esq. (*via email*)